J-S06036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SAEDAIR D. LINDSEY | : | |
| | : | |
| Appellant | : | No. 1228 EDA 2023 |

Appeal from the Judgment of Sentence Entered November 29, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003535-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SAEDAIR D. LINDSEY | : | |
| | : | |
| Appellant | : | No. 1229 EDA 2023 |

Appeal from the Judgment of Sentence Entered November 29, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003537-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SAEDAIR D. LINDSEY | : | |
| | : | |
| Appellant | : | No. 1230 EDA 2023 |

Appeal from the Judgment of Sentence Entered November 29, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003539-2020

BEFORE: DUBOW, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED APRIL 12, 2024**

Saedair Lindsey ("Lindsey") appeals from the judgment of sentence following his convictions for first-degree murder, criminal conspiracy, firearms not to be carried without a license, carrying firearms on the streets of Philadelphia, aggravated assault, recklessly endangering another person ("REAP"), and possession of an instrument of crime ("PIC").[1] We affirm.

The facts as recited by the trial court are as follows:

> On April 23, 2020, at around 3:00 p.m., Philadelphia Police Officer Gilbert Brito was off duty and on his way to work in his personal vehicle. While driving northbound on 65th Street and Dicks Avenue, Officer Brito came to a stop at a traffic light. While waiting for the light to change, Officer Brito heard multiple gunshots and looked around to see where the gunshots were coming from. Still inside his personal vehicle, Officer Brito observed a black male wearing a blue jacket with a black hoodie and dark colored pants, walk in front of his vehicle with a handgun. Seconds later, Officer Brito observed another black male walk in front of his vehicle on foot. Officer Brito immediately pulled over to call 911 after he observed the [victim], who was shot, through his rearview mirror, and another off-duty officer at the scene. Officer Brito exited his vehicle and proceeded to render aid to the [victim]. Once the marked patrol vehicle arrived, Officer Brito and Officer Roman[1] carried the [victim's] body into the patrol car and the [victim] was transported to the hospital.
>
> [1] Officer Roman's first name does not appear in the record.
>
> Detective Michael McKenna and his partner retrieved video surveillance for Masis Market . . . . Detective McKenna watched the video surveillance from Masis and then followed the path the

---

[1] **See** 42 Pa.C.S.A. §§ 2502(a), 903, 6106, 6108, 2702, 2705, 907.

shooters took after the shooting to obtain more video. They obtained video from the Philadelphia Police Department's real time crime center, private residences[,] and private businesses.

Detective Thorsten Lucke, an expert in the field of digital forensic recovery and compilations, testified to extracts of contents that were recovered from the cellular device of [co-defendant, Tyrek McWilliams], as well as to the videos recovered by Detective McKenna. In his presentation, Detective Lucke showed video evidence of [Lindsey] and . . [McWilliams], approaching Masis Market . . .. Lindsey can be seen wearing a grey jacket, a black hoody under it, and sneakers with a reddish bottom, with a Nike swoosh. [McWilliams] can be seen in the video wearing a dark colored jacket, a black hoody, and black shoes with a white vertical stripe at the heel. [Lindsey] and [McWilliams] are seen lingering by a parked van for quite some time, while looking in the direction of the store . . .. A white SUV comes and circles around the area and parks on the corner of 65th and Dicks Avenue . . .. [Lindsey] and [McWilliams] immediately leave the location by the white van and walk quickly and directly to the corner where the white SUV parks. [The victim], seventeen-year-old Tahj Williams, exits the white SUV. He walks towards the store but stays on the sidewalk as [Lindsey] and [McWilliams] approach him. Two other people, Tyquan Smith and Lamar Richards also exit the white SUV. As . . . Williams is on the sidewalk in front of the store, [Lindsey] [shoots] Williams while . . . Williams's back is turned and from a very close distance. [Lindsey] shoots . . . Williams four times; once in the face, twice in the back and once in the arm. The shots to the back proved to be the fatal shots. The cause of death was multiple gunshot wounds, and the manner of death was homicide. As [Lindsey] shoots . . . Williams, [McWilliams] simultaneously begins firing at Tyquan Smith and Lamar Richards. [S]mith and . . . Richards avoid the shots fired by [McWilliams] by running away and taking cover on the other side of the SUV. There were seventeen fired cartridge casings recovered at the scene, from two guns. Detectives found the white SUV and discovered it had multiple bullet holes in the passenger side of the car.

The video evidence recovered by Detective McKenna and presented by Detective Lucke to the jury, follows the path of the shooters for several blocks. The videos show that during their travel, [Lindsey] and [McWilliams] shed the clothes, masks and hats worn at the corner of 64th and Dicks. The shoes [they] wore

- 3 -

at the shooting location could also be seen in the surveillance video following their path leaving the scene, as well as items of clothes. The jurors were able to compare zoomed in video stills of the faces of the shooters, without masks and hoods, to known photographs of both [Lindsey] and [McWilliams]. The jurors were also able to compare the stills from the video and the actual videos to [Lindsey] sitting in the courtroom. This is not the only evidence of identification provided by the Commonwealth.

Police Officer Kevin Tilghman testified that he knows [] Lindsey because he "watched him grow up." As part of his duties as a police officer, P.O. Tilghman played basketball at the Hewey Elementary school in the 18th District and became friendly with the neighborhood kids. He and . . . Lindsey saw each other sometimes three times a week at the school and in the neighborhood over the course of approximately 8 years. P.O. Tilghman knew him so well he was able to give Homicide detectives [] Lindsey's home address off the top of his head. Homicide detectives showed him the videos and stills from the shooting and P.O. Tilghman identified [Lindsey] immediately.

Detective Mikal Carr worked in the 16th police district in Philadelphia for 4 years before becoming a detective. Because of his familiarity with people in his district, Homicide detectives asked Detective Carr if he would view the video surveillance recovered in this investigation and see if he knew any of the people in the video. Detective Carr identified [McWilliams] and [Lindsey] as the people in the video, based on the regular contact he had with [McWilliams] for 4 years prior to the murder, and based upon his familiarity [with] [Lindsey] from the neighborhood. He stated he was not as familiar with [Lindsey] as he was with McWilliams.

Police Officer Robert Lamanna also identified [Lindsey] from the videos and stills. P.O. Lamanna spent approximately 4-5 years in the 18th District and knows [Lindsey] from his time there. As part of his assignment for 2 years in the Criminal Intelligence unit of the Philadelphia police department, P.O. Lamanna followed [Lindsey's] Instagram account where he would see photographs of [Lindsey], who identified himself as " Siddy" or Saedair Lindsey. He also testified that he knew of [Lindsey] from his investigation of him in another case.

Police Officer Jeremy Olesik, a 15-year veteran of the Philadelphia Police Department[,] also identified [Lindsey] from the video surveillance recovered from the scene of the murder and the flight therefrom, as well as the still photos from the video. Officer Olesik knew [Lindsey] from numerous contacts in the confines of the 18th police district. In fact, Officer Olesik had a documented interaction with [Lindsey] on February 28, 2020.

The Commonwealth also called Sergeant Ronald Green, a veteran Philadelphia police officer with more than twenty-five years of experience in the area where [Lindsey] was known to spend time. He had a documented interaction with [Lindsey] also on February 28, 2020[,] and easily identified him in the videos and stills from the shooting, based upon his knowledge of [Lindsey] and his documented interaction with him only months prior.

Police obtained an arrest warrant for [Lindsey] and arrested him on September 14, 2020.

Trial Court Opinion, 10/16/23, at 3-6 (footnotes and citations omitted, some punctuation and capitalization corrected).

In November 2022, a jury convicted Lindsey of the above-listed charges.[2] Later that month, the court imposed a sentence of life imprisonment without parole. Lindsey filed a post-sentence motion the trial court denied by operation of law.[3] Lindsey also filed a timely notice of appeal and he and the trial court complied with Pa.R.A.P. 1925.

_____

[2] The jury convicted co-defendant McWilliams of first-degree murder, conspiracy, two counts of aggravated assault, REAP, two counts of violating the Uniform Firearms Act, and possession of an instrument of crime.

[3] The clerk of court prematurely entered an order on the 120th day denying Lindsey's post-sentence motion by operation of law. That action has no significance to this appeal.

On appeal, Lindsey raises two issues for our review:

1. Did the trial judge err in sustaining a jury verdict of first-degree murder?

    a. Did the jury err as a matter of law in finding a verdict of first-degree murder despite the insufficiency of the evidence?

    b. Did the trial court mis-instruct the jury by failing to distinguish between the two defendants?

See Lindsey's Brief at 8.

Lindsey's first issue implicates the sufficiency of the evidence sustaining his first-degree murder conviction.

This Court reviews the sufficiency of the evidence under the following standard:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. . .. ***When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.***

***Commonwealth v. Stahl***, 175 A.3d 301, 303-04 (Pa. Super. 2017) (added emphasis removed). In reviewing a sufficiency claim, this Court has also acknowledged that:

> we may not weigh the evidence and substitute our judgment for the fact-[]finder . . .. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and

the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014) (citation omitted). A reviewing court "evaluate[s] the entire trial record and all evidence actually received, in the aggregate and not as fragments isolated from the totality of the evidence." *Commonwealth v. Nixon*, 801 A.2d 1241, 1243 (Pa. Super. 2002).

To convict a defendant of first-degree murder, the Commonwealth must prove he acted with the specific intent to kill, a human being was unlawfully killed, and the killing was done with premeditation or deliberation. *See Commonwealth v. Fletcher*, 861 A.2d 898, 907 (Pa. 2004). The intent to kill may be formulated in a fraction of a second. *Commonwealth v. Jordan*, 65 A.3d 318, 323 (Pa. 2013). The Commonwealth may prove the specific intent to kill with circumstantial evidence. *See Fletcher*, 861 A.3d at 907. The use of a deadly weapon on a vital part of a victim's body is sufficient to establish the specific intent to kill. *See Commonwealth v. Diggs*, 949 A.3d 873, 878 (Pa. 2009).

Lindsey asserts the evidence failed to prove his specific intent to kill because only one of the victim's injuries was fatal, the shots were not explicitly aimed at the victim's vital organs, the ballistic evidence was weak, there was no DNA evidence, there were no eyewitnesses, the other people shot at did not testify, and the killing must have been third-degree murder because it was not premeditated. *See* Lindsey's Brief at 14-18.

The trial court found the evidence sufficient to sustain Lindsey's first-degree murder conviction. It cited the assistant medical examiner's testimony the victim suffered multiple gunshot wounds, including fatal shots to the torso/back area and the head, both vital parts of the body. **See** Trial Court Opinion, 10/16/23, at 9-10. The court also stated the evidence showed Lindsey and his conspirator waited for the victim, came to the scene armed, and immediately ambushed the victim and his companions. **See id**.

We perceive no error in the trial court's ruling. Lindsey's act of shooting the victim twice in vital parts of the body would itself permit the inference of the intent to kill. **See Diggs**, 949 A.2d at 878. Moreover, the ample evidence, which included videos of the killing and Lindsey's flight with his conspirator, clearly showed that Lindsey and his conspirator came to the scene armed and lay in wait for the victim, then attacked when he arrived. That evidence amply demonstrated Lindsey's intent to kill. **See Jordan**, 65 A.3d at 323; **Fletcher**, 861 A.3d at 907.[4]

Lindsey's second issue asserts the trial court erred in its jury instructions.

_____

[4] As noted, a proper sufficiency analysis considers all the evidence and inferences in the light most favorable to the Commonwealth as verdict winner. Lindsey's attempt to defeat sufficiency by focusing on "absent" factors cannot undo the ample evidence of his guilt. **Cf**. **Commonwealth v. Meals**, 912 A.2d 213, 222-23 (Pa. 2006) (holding a reviewing court should not assign excessive importance to "absent" factors than those found and relied upon by the trial court).

As a preliminary matter, we consider whether Lindsey's claim is reviewable. An issue not raised in a Rule 1925(b) statement will be deemed waived for the purpose of appellate review. *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998). Rule of Appellate Procedure 1925(b) is "very clear and very strict." *Commonwealth v. Smith*, 304 A.3d 35, 39 (Pa. Super. 2023). The Rule is "a crucial part of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal." *Commonwealth v. Bonnett*, 239 A.3d 1096, 1106 (Pa. Super. 2020).

Lindsey filed a 1925(b) statement but challenged only the sufficiency and weight of the evidence sustaining his convictions of first-degree murder, aggravated assault, and REAP. *See* Statement of Matters Complained of on Appeal, 7/19/23, Trial Court Opinion, 10/16/23, at 2. Lindsey did not assert an error in the trial court's jury instruction, and the trial court did not address that claim. Having failed to afford the trial court the opportunity to address his assertion of error, Lindsey cannot obtain our review of a claim first asserted on appeal. *See Lord*, 719 A.3d at 309; *Bonnett*, 239 A.3d at 1106.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/12/2024